UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                             Case No. 10-20112

D-1, STEVEN DUANE DENT,                      HON. AVERN COHN

    Defendant.
_____/

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 65)**

## I. INTRODUCTION

This is a criminal case. Defendant Steven Duane Dent is charged in a 124 count indictment returned March 24, 2010 (Doc. 3):

| | |
|---|---|
| Count I | Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 846; |
| Count II | Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 846; |
| Count III | Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841; |
| Counts IV–CXXIII | Laundering of Monetary Instruments in violation of 18 U.S.C. § 846; and |
| Count CXXIV | Criminal Forfeiture under 21 U.S.C. § 853 and 18 U.S.C. § 982. |

Dent is challenging the legality of the March 15, 2007 search of his vehicle by Michigan State Troopers in Branch County, Michigan that led to the seizure of thirteen kilograms of cocaine. The cocaine seized from Dent's vehicle forms the basis of Count I

of the indictment. Now before the Court is Dent's motion to suppress (Doc. 65). The motion is DENIED. The reasons follow.

## II. BACKGROUND

### A. Factual Background

On February 6, 2013, Dent filed a paper entitled

> Motion to Suppress Physical Evidence, And The Fruits Thereof, Seized Pursuant To An Illegal Search And Seizure Of A Motor Vehicle, And Of The Person Of The Defendant, On March 15, 2007, In Branch County, MI., And Motion For Evidentiary Hearing (Doc. 65).

The Government filed a response in opposition (Doc. 70). Dent filed a reply (Doc. 71).

On March 20, 2013, after the motion was fully briefed, the Court held an evidentiary hearing. The Government called two witnesses: (1) Michigan State Trooper Matthew Unterbrink; and (2) Michigan State Trooper Ben Bordner. The following testimony was elicited through Unterbrink and Bordner.

**1. Unterbrink's Testimony**

Unterbrink has been a Michigan State Trooper for eight and a half years. In 2007, Unterbrink was assigned to traffic duty near the Michigan–Indiana border known as the "Coldwater post." His duties included patrolling Interstate 69 ("I-69").

On February 28, 2007, Unterbrink was on-duty patrolling the Michigan–Indiana border on I-69. Unterbrink observed Dent speeding in a black GMC Yukon driving on I-69 southbound towards Indiana. Unterbrink initiated a traffic stop of Dent's vehicle.

Unterbrink approached the vehicle and asked Dent for his identification and vehicle registration. Dent provided Unterbrink with a Michigan driver's license in the name of "James Walker." Dent also provided Unterbrink with the vehicle's registration, which was

2

in his own name. Unterbrink asked Dent who "Steven Duane Dent" was because the vehicle was registered in this name, which is a different name than the driver's license Dent provided. Dent replied that it was his friend.

During the traffic stop, Unterbrink asked Dent where he was traveling. Dent replied that he was going to the outlet malls in Fremont, Indiana, just south of the Indiana state border.

Before letting Dent go, Unterbrink went back to his patrol vehicle to run a driver's license/LEIN/NCIC check using the name "James Walker." Unterbrink learned that a person named "James Walker" had a possible child support warrant.

Unterbrink returned to Dent's vehicle and asked him to step out. He escorted Dent to the rear of the vehicle, patted him down with his consent, and asked him for his Social Security number to determine whether he was the "James Walker" with a child support warrant. Dent gave Unterbrink his Social Security number which did not match James Walker's Social Security number. Unterbrink took Dent at his word that his name was Walker. Therefore, Unterbrink did not suspect Dent of doing anything illegal at that time.

Unterbrink issued Dent a citation for speeding and allowed him to leave. The total time for the stop was fifteen to twenty minutes.

On Thursday, March 15, 2007, Unterbrink was again on-duty patrolling the Michigan–Indiana border on I-69. It had snowed the day before and, according to Unterbrink, it was a "gloomy Michigan day."

Unterbrink was on traffic duty. He was stationary using the patrol vehicle's radar detector to detect speeding vehicles. Unterbrink was parked in the Northbound lane on I-69 under the bridge at Herricksville Road around 9:30 AM when he spotted Dent's Yukon

in his sideview mirror traveling Northbound on I-69. Unterbrink's attention focused on Dent's vehicle because he noticed that one headlight was on and the other headlight was off. Unterbrink believed that the passenger side headlight was out. Unterbrink did not immediately recognize Dent's vehicle as the same one he pulled over two weeks prior.

Unterbrink allowed Dent to pass him and then initiated a traffic stop at 9:33:24 AM. After approaching Dent's vehicle, Unterbrink recognized Dent and Dent also recognized him. Unterbrink testified that "[o]nce we had made contact with one another, we recognized one another and he said you wrote me a speeding ticket. And I said, yeah, I wrote you a speeding ticket." Unterbrink informed Dent that he pulled him over this time for defective equipment–the defective headlight.

Like he did in the prior stop, Dent gave Unterbrink a driver's license in the name of "James Walker" and registration in his own name. Unterbrink asked Dent where he was heading. Dent replied that he was coming back from the auto auctions in Fort Wayne, Indiana. Based on his previous experiences initiating traffic stops, Unterbrink was familiar with the Fort Wayne auto auctions. Unterbrink knew that the auto auctions were on Tuesdays and Thursdays and began at 9:00 AM. Given that it was 9:30 AM on a Thursday, Unterbrink was suspicious of Dent's explanation of where he was traveling from.

Unterbrink became more suspicious when Dent told him he stayed in Indiana with a friend for a couple of days but Unterbrink did not notice any luggage in the vehicle. Unterbrink also observed multiple cell phones inside the vehicle.

In addition, the vehicle, to Unterbrink's knowledge at that time, was registered to Dent's friend in Detroit, Michigan. Unterbrink did not know at that time that the driver he had pulled over was actually Dent. The "James Walker" driver's license had a Pontiac,

4

Michigan address. Unterbrink suspected that Dent was traveling to Detroit, ". . . a known source and destination area for criminal activity, narcotics, currency transportation, [and] firearms." Unterbrink also knew Fort Wayne to be ". . . a known source area for narcotics that would come into the Coldwater area."

Because of Unterbrink's suspicions, after gathering Dent's paperwork and returning to the patrol vehicle, Unterbrink contacted his partner, Bordner, for backup. While waiting for Bordner, Unterbrink ran a background check ". . . to check his driver's license, make sure it was valid, any warrants, check the vehicle's registration, [and] make sure the plate was up to date." Unterbrink ran the background check using the name James Walker.

Bordner arrived at the scene at 9:50:26 AM. When Bordner arrived at the scene, Unterbrink provided him with the driver's license and registration provided by Dent. Bordner contacted another trooper to run an EPIC[1] background check on the names "James Walker" and "Steven Duane Dent."

While the third trooper was running the EPIC background check, Unterbrink approached Dent's vehicle and asked him to step out. He patted Dent down with Dent's permission and explained to Dent the suspicions he had. At this point, Dent became hostile and told Unterbrink that he felt as though Unterbrink was harassing him. Unterbrink asked Dent for his consent to search the vehicle. Dent refused. Unterbrink then instructed Dent to return to his vehicle. Dent complied. Unterbrink returned to the patrol vehicle with Bordner. As the troopers were waiting for the EPIC background check results, Unterbrink

---

[1] EPIC stands for El Paso Information Center. According to Bordner, EPIC is ". . . a database . . . that keeps track of individuals that had been stopped in the past, [and] what types of things had been found during those traffic stops."

5

was writing Dent a citation for an equipment violation.

Unterbrink and Bordner learned from the background check that James Walker was an alias name for Steven Duane Dent. The troopers learned that the Secretary of State driver's license images of Walker and Dent were of the same person.

After learning that Walker and Dent were the same person, Unterbrink and Bordner approached Dent's vehicle and informed him that he needed to step out and that he was going to be placed under arrest. Dent started to roll up his window and told the troopers, "no,no,no. . . [h]e wasn't going to step out." Unterbrink reached for the keys but Dent ". . . pulled the vehicle down in drive. We started a brief scuffle. He grabbed my arm, pulled it into his chest, and started to drive off with me hanging on the side of the vehicle." Bordner ran back to his patrol vehicle, drove in front of Dent, and boxed him in. Dent then parked his car, stepped out voluntarily, and was placed in custody at approximately 10:09 AM. He was driven away from the scene at 10:19:50 PM.

After Dent was arrested and placed in custody, Trooper Douponce arrived at the scene and conducted a search of Dent's vehicle. Thirteen kilograms of suspected cocaine were found in a duffel bag in the trunk covered up with miscellaneous building supplies.

Unterbrink searched Dent's wallet at the police station. His wallet contained a Michigan driver's license with the name Steven Duane Dent.

Dent's vehicle was also inspected at the police station. The troopers determined that Dent's passenger's daytime running light was out, not the headlight.

**2. Bordner's Testimony**

Bordner has been a Michigan State trooper for fourteen and a half years.

Bordner recalled that, on March 15, 2007, "Trooper Unterbrink had made a traffic

stop in Branch County and was requesting assistance at the scene so I responded to the scene." Bordner was ". . . somewhere south, on the southern part of I-69 in Branch County" when Unterbrink requested assistance. After arriving at the scene, Bordner talked to Unterbrink. Unterbrink gave Bordner the "James Walker" driver's license and Dent registration. Bordner contacted Trooper Douponce out of the Battle Creek police station to run a background check on both names in the EPIC system. From that background check, Bordner and Unterbrink ". . . determined that it was possible that James Walker and Steven Dent were one and the same." Bordner then contacted Trooper McGuire to search Secretary of State records under both Walker's and Dent's names. McGuire confirmed that Walker and Dent were the same person.

After learning that Walker and Dent were the same person, Unterbrink and Bordner approached Dent's vehicle and asked him to exit the vehicle.[2] The troopers intended to arrest Dent for providing them false information. Bordner observed Unterbrink and Dent scuffle ". . . and the window was being rolled up, the doors were locked, and I ran around to the passenger side to attempt to gain entry to the vehicle but couldn't." Bordner observed Dent drive off with Unterbrink hanging from the driver's side of the vehicle. Dent stopped and started the vehicle multiple times with Unterbrink still hanging on from the outside.

**B. Procedural Background**

Dent was charged in Branch County 3-A District Court with Possession with Intent

---

[2] Both troopers had originally approached Dent's vehicle from the driver's side door. However, Dent refused to step out of the vehicle or open the door so Bordner ran to the passenger's side to try to open the door.

7

to Deliver over 1,000 Grams of Cocaine and Possession of Over 1,000 Grams of Cocaine based on the drugs seized at the March 15, 2007 traffic stop. He appeared for a preliminary hearing in the district court on April 2, 2007. After hearing testimony, the court bound Dent over for trial in the Branch County 15th Judicial Circuit Court.

Dent filed a motion to suppress in circuit court. On October 17, 2007, the circuit court held an evidentiary hearing. The State called Unterbrink as a witness. Dent did not call any witnesses.

The circuit court denied Dent's motion. (Doc. 75-2 at 27–29, Circuit Court Evidentiary Hearing Transcript). The circuit court determined that, based on the totality of the circumstances, the traffic stop was reasonable. First, the circuit court determined that Unterbrink had a reasonable belief that a headlight was out on Dent's vehicle. At the time, most of the cars on the road had their headlights on because it was a gloomy day. Second, the circuit court held that the length of the stop–approximately thirty minutes–was not unreasonable under all of the circumstances.

Dent filed an application for leave to appeal to the Michigan Court of Appeals. His application was denied for lack of merit. (Doc. 75-3, COA Denial). The Michigan Supreme Court declined review.

Dent was convicted of Possession With Intent to Deliver over 1,000 Grams of Cocaine in circuit court. While on bond and before sentencing, Dent was arrested for possession of heroin. He was not detained by agents after his arrest. Prior to sentencing in the state court case, Dent fled to Arizona. Dent was apprehended in late 2012. To date,

Dent has not been sentenced.[3]

### III. STANDARD OF REVIEW

A judge determines the admissibility of evidence, as a matter of law, outside the presence of the jury. *Jackson v. Denno*, 378 U.S. 368 (1964). At a suppression hearing, the Government bears the burden in establishing admissibility of the evidence by a preponderance. *Lego v. Twomey*, 404 U.S. 477 (1972).

### IV. DISCUSSION

Dent asks the Court to suppress the evidence seized at the March 15, 2007 traffic stop. Dent also seeks suppression of his post-arrest statements and recorded jail phone calls as fruits of the illegal stop, arrest, and seizure.

**A. The Law**

The United States Supreme Court has explained that "[a]n automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)). That a police

---

[3] At the evidentiary hearing, the Court asked the Government whether Dent is precluded from rearguing the same motion that he argued in state court. The Government did not have a definitive answer. In Dent's supplemental brief, he says that the Court has an independent obligation to assess the credibility of witnesses. In addition, Dent argues that the state court ruling denying his motion to suppress is not final because he has not been sentenced, which would trigger his ability to appeal the circuit court's ruling. Having conducted an evidentiary hearing, the Court will deny the motion on the merits. The Court does not determine one way or another whether Dent is legally precluded from rearguing the same motion.

officer might have an ulterior motive for initiating a traffic stop–such as the race of the occupant in the vehicle–is irrelevant. The Supreme Court has explicitly stated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813.

After lawfully stopping and detaining a vehicle for a traffic violation, "the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms*, 434 U.S. at 111 n.6. "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (citations omitted).

As the Sixth Circuit has explained, "[i]f the initial traffic stop is illegal or the detention exceeds its proper investigative scope, the seized items must be excluded under the 'fruits of the poisonous tree doctrine.'" *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). "The lawfulness of an investigatory stop is judged by the totality of the circumstances to determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior." *United States v. Campell*, 549 F.3d 364, 371 (6th Cir. 2008) (internal citation omitted). During the stop, police officers are permitted to ask "traffic-related questions, and questions about a driver's identity, business and travel plans." *Hill*, 195 F.3d at 268 (citations omitted).

**B. Analysis**

Dent argues that he was stopped on March 15, 2007 solely because he is African

American. He contends that the troopers did not have reason to stop him or to search the vehicle, and that he was detained at the scene for an unreasonable length of time. Dent's arguments are without merit.

**1. The Traffic Stop Was Legal**

Unterbrink initiated the traffic stop on Dent's vehicle at 9:33:24 AM on March 15, 2007. Although the sun was up, most vehicles on the road had their headlights on. It was a gloomy day.

Unterbrink was parked on I-69 in the Northbound lane. His vehicle's radar was activated to detect speeding vehicles. Unterbrink looked in his sideview mirror and noticed Dent's vehicle driving in the Northbound lane. To Unterbrink, it appeared as though Dent's passenger side headlight was defective. Thus, Unterbrink decided to stop Dent for an equipment violation.

Dent contends that he was not required to have his headlights on at the time he was pulled over, and, therefore, Unterbrink did not have probable cause to pull him over. Although Mich. Comp. Laws § 257.685(1) requires a motor vehicle to be equipped with at least two head lamps, one on each side of the front of the motor vehicle, and Mich. Comp. Laws § 257.699 requires the headlights to emit a white light, Dent relies on Mich. Comp. Laws § 257.684(a) which states, in pertinent part,

> Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices. . . .

Dent argues that, because the sun rose at approximately 7:50 AM on March 15,

11

2007, it was not lawfully possible to be stopped for a defective headlight. Dent's argument is unpersuasive.

As explained above, Michigan law requires that headlights on a vehicle emit a white light. If the headlights do not emit a white light, a driver can be stopped for an equipment violation. The statute does not limit an officer's ability to pull over a vehicle for a broken headlight only at those times when the headlights are required to be on. If an officer notices a defective headlight during the day, as was the case here, he or she may initiate a traffic stop and issue a citation to the driver for defective equipment. Nothing in the statute says that traffic stops for defective equipment can only be initiated during certain times. Unterbrink believed that the passenger headlight on Dent's vehicle was defective and he initiated a traffic stop to issue an equipment violation. The stop was lawful.

**2. The Length of the Stop was Reasonable**

Dent says that the length of the stop was unreasonable. He argues that the troopers did not have probable cause to search his vehicle until they unreasonably prolonged his detention at the scene. In essence, he says that he was detained at the scene for an unreasonably long period of time while the troopers were manufacturing probable cause to search his vehicle. Dent is mistaken.

After approaching the driver side window and seeing Dent, Unterbrink realized that he had ticketed Dent for speeding two weeks prior. Dent also remembered Unterbrink. At that prior stop, Unterbrink had asked Dent to step out of the vehicle and recite his Social Security number because Dent provided a fraudulent driver's license bearing the name "James Walker." A search of the name "James Walker" revealed a possible child support warrant.

At the March 15 stop, after again providing Unterbrink with a driver's licence with the name "James Walker" and the vehicle's registration in Dent's name, Dent explained to Unterbrink that he was returning from the auto auctions in Fort Wayne. Unterbrink was suspicious because he was aware that the auto auctions began at 9:00 AM and he stopped Dent shortly after 9:30 AM. Unterbrink did not believe that a person attending the auto auctions in Fort Wayne would have been able to make it as far as Dent did by 9:30 AM.

Unterbrink also observed multiple cell phones in Dent's vehicle heightening his suspicions. In addition, Dent told Unterbrink that he was staying with a friend for a couple days, but Unterbrink did not see any luggage in Dent's vehicle. Finally, Unterbrink's suspicion was also raised because he believed that Fort Wayne–where Dent said he was traveling from–and Detroit–where the registrant of the vehicle resided–were areas associated with drug trafficking, *etc*.

Because of Unterbrink's suspicions, he called for backup as he took the driver's license and registration Dent gave him back to his vehicle. While waiting for Bordner, Unterbrink ran a background check on "James Walker."

When Bordner arrived, Unterbrink gave him the driver's license and registration. Bordner contacted Trooper Douponce to run a background check on the name "James Walker" in the EPIC system. At this same time, Unterbrink approached Dent's vehicle, asked him to step out, and explained to him the suspicions that he was having. He conducted a "pat down" search of Dent's person and asked Dent to search the vehicle; Dent did not consent. Unterbrink then asked Dent to go back to the vehicle and Unterbrink went to Bordner's vehicle. At the same time, Unterbrink was writing an equipment violation citation to issue to Dent. Shortly thereafter, Trooper Douponce informed Bordner that

13

"James Walker" may be an alias for "Steven Dent." Thus, Bordner called Trooper McGuire who was able to confirm that Walker and Dent were the same person.

It is not disputed that once the troopers learned that Walker and Dent were the same person, they had probable cause to arrest Dent, search him, and search his vehicle. However, Dent argues that he was detained for an unreasonable length of time prior to this. He argues that he should have immediately been issued an equipment violation and released.

Up until the point that the troopers found out that Walker and Dent were the same person, Dent had been stopped for approximately thirty minutes. The length of the stop was reasonable given the circumstances in this case.

During the traffic stop, Unterbrink had a reasonable and articulable suspicion that criminal activity was afoot. Dent's explanation of where he had been was suspicious because Unterbrink did not notice any luggage in the vehicle. Dent had multiple cell phones in the vehicle, which Unterbrink associated with drugs and other criminal activity. Unterbrink had stopped Dent two weeks prior driving to Indiana. He believed Fort Wayne and Detroit to be areas associated with drugs.[4]

Based on Unterbrink's suspicions, it was reasonable to prolong the stop while Bordner arrived at the scene and a thorough background check was completed. The troopers testified that, at the time of the stop, their patrol vehicles did not have computers. Thus, they had to call their post to issue citations and to run background checks.

---

[4] The Court does not rule that Detroit and Fort Wayne are areas associated with drugs and drug trafficking, nor is that the Court's inquiry. The Court's inquiry is limited in determining whether Unterbrink and Bordner had a reasonable and articulable suspicion that criminal activity was afoot based on information *they* knew at the time.

Accordingly, given the above, thirty minutes was a reasonable detention at the scene in this case.

## V. CONCLUSION

For the reasons above, Dent's motion to suppress was denied. The Government has met its burden in establishing that the search of Dent's vehicle was constitutional.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: August 2, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 2, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160